## 12779

BALTAZZI v. McCORMICK *ET AL.*

(150 S. E., 900)

*Messrs. Hendersons & Salley,* for appellant, 

*Messrs. Williams, Croft .& Busbee,* for respondent, 

December 10, 1929.

The opinion of the Court was delivered by MR. CHIEF JUSTICE WATTS.

This action was commenced in the Court of Common Pleas for Aken County, S. C., by the due legal service of the summons and complaint with a warrant of attachment of defendant's horses, on or about the 12th day of March, A. D. 1927, to recover the sum of $3,500, the purchase price of a horse named Bacchus, sold by the plaintiff to the defendant on March 5, 1927. The attachment of defendant's horses was released by the defendant giving bond, and in due time the defendant answered the complaint setting up, among other things: That the defendant, being desirous of purchasing a high-class saddle horse, and learning that the plaintiff had a horse for sale, she approached the plaintiff for the purpose of purchasing such a horse if he had one suitable for her purposes. That she informed the plaintiff that she wanted a high-class saddle horse and one which was

fit and suitable for riding and one that could jump hurdles and one of the hunter class of horses. That the plaintiff showed the defendant the horse Bacchus, and represented to her that the horse was a high-class horse with a fine pedigree, that he was brought over from France, and that he was fit and suitable for the purposes of riding and jumping hurdles and a splendid hunter, and guaranteed and represented that the horse was in good, sound health and body and free from all defects, and that he would be quite suitable for said purposes, and offered to sell the horse for $3,500, and that, relying upon said representations, she agreed to purchase the said horse, and thereupon gave the plaintiff her check for $3,500 to cover the purchase price thereof.

The defendant further alleged that, soon after getting possession of the said horse Bacchus, she discovered that he was lame in his right hind leg, and that he had an injury or defect in his stifle joint in his said right hind leg which made him lame, and that she also found that he had a jack or spavin knot on his right hind leg, and that he was otherwise diseased in said right hind leg, which made him lame and utterly unfit and unsuitable for the purposes for which he was purchased, and in her opinion and as she was informed the said troubles were chronic and incurable, and on account thereof the said horse was utterly worthless, unfit, and unsuitable for the saddle and jumping purposes for which he was bought, all of which was known to the plaintiff at the time he sold the horse to the defendant and at the time he made said representations as to his quality and soundness, and on account thereof there has been an absolute and entire failure of consideration for the said check.

Defendant further alleges that, immediately upon discovering the defective condition of the horse, she rescinded the said contract of purchase, returned the said horse to the plaintiff, and demanded a return of her check, but the plaintiff refused to accept said horse and refused to return her

check, and thereupon she notified the plaintiff that she would hold the said horse at his own risk and expense, and the defendant demanded that the said contract of sale be rescinded and that she be paid the reasonable costs and expenses of taking care of the horse, since she returned or offered to return him to the plaintiff.

The case came on for trial at Aiken before Hon. S. W. G. Shipp, presiding Judge, and a jury, on March 30, 1928, and resulted in a verdict in favor of the plaintiff against the defendant on the 31st day of March, 1928, for the sum of $3,500. The defendant made a motion for a new trial upon the minutes of the Court, which was refused by the presiding Judge, and judgment was thereafter duly entered up in the office of the Clerk of Court for Aiken County in favor of the plaintiff against the defendant for the amount of the verdict and costs.

Within due time the defendant served her notice of appeal from the rulings and charge of the presiding Judge and the verdict of the jury and the judgment entered thereon, to the Supreme Court of this State, and now asks the Supreme Court to reverse the said judgment upon the following case and exceptions:

The exceptions, six in number, are:

(1) The presiding Judge erred in holding and in charging the jury that the defendant could not rely on an implied warranty of soundness and suitability of the horse Bacchus in this case, and in refusing to charge defendant's second request relating to implied warranty of soundness and adaptability and that a sound price warrants a sound commodity, and that it is fit and suitable for the purposes for which the seller knew it was intended, for the reason that, under the state of the pleadings and evidence in this case and the contention of the plaintiff that there was no warranty or guaranty of the horse and the contention of the defendant that there was an express warranty and guaranty of the horse,

there was an issue of fact to be determined by the jury as to which contention was correct; and, if the jury found that there was no express warranty of the horse, then the defendant had the right, under the circumstances, to have the jury charged the law of implied warranty applicable to such state of facts, and it was error for his Honor to hold otherwise.

(2) The presiding Judge erred in charging the jury that "if Mr. Baltazzi made an express warranty of the horse, and there was a breach of the warranty, then she (the defendant) had a right to rescind the contract,' and it would be her duty to return to him in the same condition as she received it," and in stressing upon the jury that, in order to rescind a contract of purchase of an article, the purchaser must return the article to the seller in the same condition it was in when he received it; the error being that it is not necessary to return the article in the same condition, under the law, as when it was received, but only substantially the same condition; and, where it is necessary to test the article or thing purchased, to determine whether it is sound or comes up to the warranty, and such test or investigation brings about a change in the condition of the article or property, or where the change in the property is the result of the defects of which the purchaser complains, it is not necessary for the purchaser to return the property in the same condition as when purchased in order to be able to rescind the contract. In view of the testimony that the horse went very lame on Saturday after the drag hunt on the next day after the sale, and plaintiff contended strongly that the horse was hurt in that hunt, and could not be returned in the same condition as when received, and defendant's testimony tended to show that the hunt on Saturday only brought out the latent defects in the horse, under this charge the jury was practically instructed that the defendant could not rescind the contract under which the horse was purchased, all of which was very harmful and prejudicial to the rights of the

defendant, as it practically destroyed her right to rescind the contract of sale in this case.

(3) The presiding Judge erred in charging plaintiff's fifth request to charge to the effect that, before a person can rescind a contract of sale he must return the property in the same condition as when he received it, "for no person has a right after a trade is made, to damage the property or permit the same to be damaged, whether by accident or design and to throw it back upon the hands of the seller; and under such circumstances the seller has the right to refuse to accept the return of the property"; the error being that said request was a charge on the facts, and, under the testimony in this case, as it appeared that the horse went badly lame on Saturday after he was ridden in the hunt the day after the sale, and the defendant had a reasonable time under the law to discover latent defects in the horse, and to test him therefor, and it further appearing that the horse had been blistered for an old trouble in his stifle joint, and that the lameness was the result of the defect which the ride on Saturday brought out where it could be seen, under this charge the jury could have rendered no other verdict than a verdict for plaintiff because they were instructed that the defendant could not rescind if the property had been damaged and could not be returned in the same condition as when received, which we submit was not a sound proposition of law. The modification in the charge of this request emphasized the error. It is respectfully submitted that the purchaser has a reasonable time after he receives the property to test and to investigate it for latent defects; and, in making these reasonable tests, if the property is damaged, he is not bound to return it in the same condition, in order to be able to rescind.

(4) The presiding Judge erred in charging the plaintiff's sixth request which was as follows: "I charge you further that in order for the defendant to successfully establish her defense she must prove to you by the

greater weight of the evidence that she relied solely upon the representations which she alleges the plaintiff made to her. Therefore, if you should find that she undertook to make independent investigation of her own and that the plaintiff did nothing to prevent a full investigation, she can not afterwards claim that the plaintiff made misrepresentations." We submit that this charge was erroneous, and that defendant would not be estopped from claiming misrepresentations. Nor was this error cured by the modifications of this request made by the presiding Judge, because, even if the defendant discovered the blister and thought that she discovered some lameness in the horse before the sale, and was assured by the defendant that the lameness was probably a stone bruise or because the horse was barefooted, and would amount to nothing, or that the blister was a manure burn, and she was misled by the plaintiff respecting the nature, character, extent, or probable consequences of said defects, such examination on the part of the defendant would not be a waiver of such defects and the defendant would still have the right to rely on such representations, even though they related to obvious defects.

(5) The presiding Judge erred in refusing to charge defendant's sixth request as submitted and in his modification thereof; the said request and modification being as follows:

"While it is the rule in this State that the law does not imply a warranty against defects which are plain and obvious or of which the purchaser has notice; yet, if the purchaser is misled by the seller respecting the nature, character, extent or probable consequences of the defects or disease of which the seller has notice, the law will imply a warranty against such defects."

"The Court: Well, I will not say that the law implies it. I will charge you if she was misled by the misrepresentations of the seller as to a certain defect, or the nature of them, then there would be no waiver on her part.

"So in this case if you should find that the horse was suffering from the alleged defects at the time of the sale, and that such defects were obvious, or that the defendant had notice of such defects, yet if the plaintiff assured the defendant that these alleged defects were not defects at all, or that they would amount to nothing, and the defendant was misled by the plaintiff on such assurances that the horse was sound, into buying the horse, then I charge you that an acceptance of the horse would not be a waiver of such alleged defects and the law would imply a warranty on the part of the plaintiff.

"The Court: I will charge you that the defendant would not waive a defect if the plaintiff assured her that the defect did not amount to anything, and she was misled by the plaintiff."

The error being that, under the law of this State, if the defendant was misled by the plaintiff as to the nature and extent of the alleged obvious defects, the law will imply that there was a warranty as to them, and his Honor erred in holding that there would be only no waiver of such defects. Especially was this harmful and prejudicial because he also charged the jury that defendant could only rely on obvious defects to rescind in this case.

(6) The presiding Judge erred in refusing to allow defendant's counsel to elicit from the plaintiff while he was a witness on the stand what he paid for the horse Bacchus, and in sustaining the objection of plaintiff's counsel to the question asked the plaintiff, "What did you pay for the horse?" It is submitted that it was relevant and competent to show the price plaintiff paid for the horse as bearing on the question whether the plaintiff paid such a price as would warrant that he was sound when he bought him or whether he paid such an inadequate price as would tend to show that he was buying an unsound horse, and also competent as bearing on the question whether plaintiff knew he was buying a sound or an unsound horse, and it was error

and harmful, and prejudicial to the rights of the defendant to rule out the question.

## Legal Points

(1) Did the presiding Judge err in holding and in charging the jury that the defendant could not rely on implied warranty?

This exception imputes error to the trial Judge in his refusal to charge that the defendant could rely on both an expressed warranty and an implied warranty.

The defendant in her answer set up an affirmative defense in which she specifically and unequivocally pleaded an express warranty. Since 1833, when Justices O'Neall and Harper concurred with Justice Johnson in his opinion delivered on this subject, in the case of *McLaughlin v. Horton,* 1 Hill, 383, there has been an unbroken line of decisions holding that one cannot rely on an implied warranty when he pleads an express warranty, and the rule is true regardless of whether he be plaintiff or defendant.

Since the rendition of that decision, there were numerous others to follow, but the chief outstanding decision is the comparatively recent opinion of the late and able Justice Gage, concurred in by all the Court, in *Mull v. Touchberry,* 112 S. C., 422, 100 S. E., 152. It is so comprehensive and conclusive of the issue, we shall quote at length from it. The facts are almost identical with the case at bar, for it will be observed that the defendant admitted the sale, and set up an affirmative defense of express warranty, and, just like the defendant in the instant case, complained of error when the trial Judge refused to charge that he (the defendant) might rely on both an express and implied warranty. We quote from the case:

"The defendant desired the Court to instruct the jury that the defendant might stand, besides on the expressed warranties, on that warranty implied by law, to wit, that a sound

price calls for a sound article. The Court ruled that, inasmuch as the defendant had pleaded an express contract of warranty, there was no room for implication. The challenge of that statement of the law is the major issue in the case. * * * It is true that—'From an expressed undertaking, the law will also imply whatever the parties may be reasonably supposed to have meant, and what is essential to render the transaction fair and honest.' Bishop on Contracts, § 105.

"But that is not saying that, where the expressed undertaking has limited the liability of a vendor, the same may be enlarged by that different contract implied from the simple act of sale. The right of the plaintiff to hold the defendant to the contract which the defendant says was expressed arises, not so much out of a rule of evidence, nor out of pleadings; it arises out of the sense of the transaction. If, therefore, the defendant had particularly alleged, as it is contended he did, two defenses, the one a contract implied by law, and the other a contract expressed by the parties, yet we should hold that the expressed contract fixes the plaintiff's liability.

"The appellant argues that the rule we have stated shuts the defendant up to confine his defense to an express warranty; but the defendant shut himself up when he alleged the parties made a particular agreement." *Mull v. Touchberry,* 112 S. C., at page 424, 100 S. E., 152. Again, in 1921, in a unanimous opinion, this Court adheres to the rule laid down in the *Mull v. Touchberry case, supra.*

"* * * The exceptions shall not be long or argumentative in form.

"But, waiving such objections, they cannot be sustained, for the reason that an action cannot be maintained both upon an express and an implied warranty (*Mull v. Touchberry,* 112 S. C., 422, 100 S. E., 152)." *Simmons et al. v. Roanoke City Mills,* 116 S. C., 432, 107 S. E., 903, at page 904.

The principle of law having been so well defined, it will be noted that, in later cases this Court deemed it only neces-

sary to make a terse statement of the law, and often without even citing any authorities.

"An expressed warranty excludes the implied warranty of soundness or adaptability." *Livingston v. Reid-Hart-Parr Co.,* 117 S. C., 391, 109 S. E., 106, at page 110.

"The next question is as to the implied warranty. An express warranty limits the warranty to that expressed. This point cannot be sustained." *Murray Co. v. Peacock,* 117 S. C., 384, 109 S. E., 121.

In *Wells v. Spears,* 1 McCord, 421, the decision of the Court is stated in the syllabus as follows: "An express warranty of title does not exclude an implied warranty of soundness."

"But no such situation is presented in the present case. The plaintiff pleads that he purchased the truck from the defendant, and that the defendant 'expressly and impliedly warranted the truck to be sound and free from defects.' Here, as stated in *McLaughlin v. Horton,* 1 Hill, 383:

" 'The soundness of the (article) is the subject of expressed warranty; * * * and the plaintiff's liability (defendant's in this case) cannot be extended beyond it, either by parole or legal implication.'

"We must therefore conclude that the trial Judge was in error, the soundness of the truck being the subject of express warranty, in holding that the defendant was liable under both an express warranty and an implied warranty. He should have held that an action could not be maintained upon both, and that the express warranty precluded the implied warranty." *Rainey v. Simon,* 139 S. C., 337, 138 S. E., 41, at page 42.

So much for the law of the case. Now, as to the "sense of the transaction" as very aptly expressed by Justice Gage in the *Mull-Touchberry case.* What are the facts, that is, what kind of warranty was in the mind of the defendant-appellant when she purchased, for that is really the true test?

This exception is overruled. There was conflict of testimony throughout the case, and the jury, whose duty was to decide the issues, decided in favor of the respondent. We see no error on the part of Judge Shipp as complained of. We think that the rulings and the charge he made was correct and free from error.

All exceptions are overruled and judgment affirmed.

MESSRS. JUSTICES COTHRAN, BLEASE, STABLER, and CARTER concur.